```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
HERNANDEZ,                                                       :
                                                                 :
                            Plaintiff,                           :
                                                                 :          20-cv-7040 (LJL)
            -v-                                                  :
                                                                 :          AMENDED ORDER
COMPASS ONE, LLC,                                                :
                                                                 :
                            Defendant.                           :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/21/2021

LEWIS J. LIMAN, United States District Judge:

Plaintiff Emmanuel Hernandez ("Plaintiff" or "Hernandez"), along with Defendant Compass One, LLC ("Defendant" or "Compass"), moves for approval of the settlement of his claims under the Fair Labor Standards Act of 1038 ("FLSA"), 29 U.S.C. §§ 201 *et seq*. The Court approves the settlement but writes separately to set forth its understanding of the proper inquiry regarding the allocation of settlement consideration for fees in FLSA cases.

Plaintiff alleges that he was employed by Defendant as a manual kitchen worker from "in or around 2003 to on or about October 4, 2019." Dkt. No. 1 ¶¶ 11, 12. He claims that "throughout the period Plaintiff was employed by Defendant, Plaintiff worked about 45-60 or more hours each week for Defendant, 5-6 days a week," that "his last regular rate of pay was about $25.10 per hour," that he "was not paid any wages for about 3-7 hours . . . each week during his employment with Defendant," that he is "owed wages including overtime wages for approximately 2.5-3 hours per week," and that in addition he also "worked a spread of hours of more than 10 hours a day approximately once a week during his employment with Defendant." *Id.* ¶¶ 13-17. He also claims that he did not receive the notices and statements required by the

New York Labor Law. *Id.* ¶¶ 21-22.

The docket reflects no activity by Plaintiff in this case after the initial case management conference other than the conduct of a mediation and the request for settlement.

Plaintiff's motion for approval calculates total unpaid wages to which Plaintiff would be entitled if he prevailed on the FLSA and New York Labor Law claims of $35,486.72. Dkt. No. 35 at 2. Assuming Plaintiff prevailed on both his New York Labor Law notice and wage statement claims he would be entitled to an additional $10,000. *Id.* Liquidated damages would entitle him to double the unpaid wages. *Id.* Defendant denies liability and claims that, had the case been litigated, it would prevail on its defense that Plaintiff was an exempt employee. Dkt. No. 36. The total settlement amount is $52,500. Dkt No. 35-1 ¶ 2. Of that amount, $17,813 would be paid to counsel, representing an attorney fee award of $17,343 or 1/3 of the total recovery plus $470 in costs, leaving $34,687 to be paid to Plaintiff. *Id.* In exchange, Plaintiff agrees to a release of any claim he brought in the lawsuit or that he could have brought "in this lawsuit under the Fair Labor Standards Act, the New York Labor Law, common law, and/or any local, state, or federal wage statute, code or ordinance, through the date of this Agreement, consistent with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)." *Id.*[1] He also agrees to execute a stipulation and order of dismissal with prejudice and covenants not to sue Defendant "concerning any matter released in this Agreement." *Id.*

In support of the settlement, Plaintiff initially submitted a letter that described the terms

---

[1] The settlement is with Flik International Corp. ("Flik") and the release is in favor of Flik. Dkt. No. 35-1. At the fairness hearing, the parties explained that the case named the wrong defendant and that Flik was Plaintiff's employer. The parties also confirmed that the reference to *Cheeks* in the release was intended not to expand the scope of the release but to narrow it. The release is limited to wage and hour claims and claims that could have been brought in the lawsuit. It is not intended to release any claims the release of which would violate *Cheeks*.

of the settlement as well as the settlement itself and the retainer letter between counsel and Plaintiff. Dkt. No. 35. The letter reflected that the settlement was the product of mediation through the Court's mediation program. *Id.* at 4. Without further elaboration, it stated that the Defendant disputed liability and that a jury could award the Plaintiff less than what Plaintiff was seeking. *Id.* The Defendant provided the further elaboration in its letter laying out its defenses. Dkt. No. 36. The retainer letter contains a provision stating that, in the event of a recovery of money for Hernandez, counsel will be entitled to a contingency fee calculated at the greater of (1) "[a] reasonable percentage which is one-third (1/3) of all sums recovered on [Plaintiff's] behalf" or (2) "[a] reasonable hourly fee which is the amount of Attorney's hourly rates . . . times the number of hours spent by the Attorney on Client's behalf" or (3) "[a] separate recovery of fee such as where a court or other tribunal awards attorney's fees or where a defendant(s) settles a demand for fees." Dkt No. 35-2 ¶ 12. Counsel's agreed hourly rates are $600 an hour (with an annual increase of 5% a year). *Id.* ¶ 26. There is a provision entitling the lead counsel here to employ or associate additional lawyers at counsel's discretion; it provides that their rate will be the same $600 an hour. *Id.* ¶ 24. The retainer letter also provides that counsel has "complete discretion to incur litigation and other out-of-pocket expenses in the prosecution of the case." *Id.* ¶ 18. Plaintiff initially did not submit any time or expense records of counsel; rather, Plaintiff relied entirely upon his retainer agreement with counsel which he contended was controlling.

The Court issued an order on September 30, 2021, inviting counsel for Plaintiff "to submit any contemporaneous time records or any other support for the fee request." Dkt No. 40. Counsel declined to do so, simply relying on the retainer agreement. Dkt. No. 38. The Court held a fairness hearing on October 4, 2021. After the hearing, counsel provided the Court with his time records "without waiving the points and arguments previously made." Dkt. No. 41. The

3

time records calculate Plaintiff's attorneys' fees at $23,550 at the retainer rate of $600 an hour or at $19,623.33 "at the reduced fee-shifting rate of $500/hr." *Id.*

The standards for approval are set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); *Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020); and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). "When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher*, 948 F.3d at 606. The Court does not consider the fee application "separately" but rather "in the context of a complete settlement agreement." *Id.*

The only issue presented relates to counsel's fees. The settlement consideration is fair and reasonable and falls within the range of possible recovery, the settlement was reached with the assistance of a mediator, it was reached as a result of arm's length bargaining between experienced counsel, and it will enable the parties to avoid the burdens and expenses of litigation and takes into account the litigation risks faced by the parties, including the risk that a factfinder might conclude that Plaintiff is an exempt employee. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36. The only issue relates to the portion of the settlement consideration allocated for attorneys' fees.

Plaintiff argues that under the Supreme Court's decision in *Venegas v. Mitchell*, 495 U.S. 82 (1990), the contractually-agreed contingent fee between Plaintiff and his lawyer "controls," counsel need not submit time records, and the Court has no authority to review the allocation of the settlement consideration as between Plaintiff and his lawyer. Counsel made the same argument before Judge Engelmayer in connection with the settlement of a case brought by a

4

different Plaintiff. Judge Engelmayer rejected the argument. "*Venegas* held that a Court's award of reasonable attorney's fees to a prevailing plaintiff from an adversary under a statute with a fee-shifting provision does not dictate the fee that the plaintiff must pay his or her lawyer pursuant to their fee arrangement. Under *Venegas*, the prevailing attorney's fee thus may be higher than that awarded from the losing party. But *Venegas* did not hold that, in a case where a court has a statutory responsibility to assure that the allocation of settlement proceeds is reasonable and fair to the plaintiff, the Court must defer to a lawyer's retainer agreement with his or her client." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 231 (S.D.N.Y. 2016).[2]

Counsel seeks to distinguish *Gurung* on the grounds that it preceded the Second Circuit's decision in *Fisher* which, in the course of discussing fee awards in FLSA cases, cited to cases decided under the civil rights fee-shifting provisions. Dkt. No. 35. He also suggests that the case is distinguishable because the allocation here is based on a percentage of the recovery which is "very common" and not on his hourly rates. Dkt. No. 38 at 3, 5. Neither argument is persuasive.

The Second Circuit did cite in *Fisher* to civil rights legislation which it characterized as "analogous" for the proposition "that a fee may not be reduced merely because the fee would be 'disproportionate to the financial interest at stake in the litigation.'" *Fisher*, 948 F.3d at 705 (quoting *Kassim v. City of Schenactady*, 415 F.3d 246, 252 (2d Cir. 2005)). Thus, a court may not "impos[e] a proportionality *limit* on recoverable attorney's fees." *Id.* at 603 (emphasis added); *see also id.* at 605 (stating "the district court erred in imposing a proportionality *limit* on

---

[2] Counsel did not cite to Judge Engelmayer's decision in his letter motion seeking approval of the settlement and the attorneys' fee request. At the fairness hearing, the Court had to request counsel to provide the citation and a copy of the opinion. *See* Dkt. No. 39.

LLG's recoverable attorneys' fees" (emphasis added)). But there is nothing in *Fisher* that suggests that where a lawyer and his client have agreed on a contingent fee, the court is relieved of its obligation to ensure that the allocation of settlement proceeds to counsel is fair and reasonable before embodying it in a court-approved settlement. To the contrary, the *Fisher* court explicitly held that "if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Id.* at 600. It cited civil rights cases for the proposition that "[t]he fee applicant must submit adequate documentation supporting the request attorneys' fees and costs." *Id.* It did not limit the documentation to an engagement letter. It quoted the language from its prior decision in *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983), that "*[a]ll* applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work." *Id.* (emphasis added). The Second Circuit specifically directed the district court on remand to "evaluate the reasonableness of the requested attorneys' fees and costs without using proportionality as an outcome determinative factor," and held that "the reasonableness of fees does not turn on any explicit percentage cap." *Id.* Thus, it held that, among other factors, the court should consider not only the sum recovered but also whether that sum gave the Plaintiff "complete recovery in the action" as well as "the tasks that counsel performed." *Id.* at 606-07. In short, *Fisher* held that the court is required to conduct precisely the review for reasonableness that counsel here seeks to avoid.

  Counsel also cannot avoid the effect of *Gurung* and *Fisher* by arguing that the fee request in *Fisher* was based on hourly rates whereas in this case he relied not on the hourly rate provision of the retainer letter but on the provision calculating the fee as a percentage of the

recovery. Neither *Fisher* nor *Venegas* drew any such distinction. As Plaintiff recognizes, Dkt. No. 38 at 5, the fact that there was a retainer in place in *Fisher* providing for counsel to be paid on a contingency based on hourly rates did not foreclose that court from directing that the allocation to counsel be independently reviewed for reasonableness. The court did not limit itself or the district courts to the question whether "the fees [we]re permitted by the retainer agreement between Plaintiff and his counsel," *see* Dkt. No. 38 at 3, and expressed no compunction at interfering with Plaintiff's right to "counsel of their choice," *see id.* at 5, to determine whether the fee that was generated as a result of the retainer agreement was reasonable. Counsel here does not dispute that the Court would have the right to reduce the hourly rate to a reasonable one even if a contract provided that counsel was entitled to an hourly rate of $1,000 or more. Indeed, he does not appear to dispute that the Court would have the responsibility to review his fee request for reasonableness if it had been based on the provisions of the agreement setting his rate at $600 an hour. It is irrelevant that Counsel here relied on the percentage of the recovery as the contractual basis for recovery. If, for example, the parties had agreed that counsel would be paid 50% or more of the ultimate recovery, the retainer agreement would not necessarily control.

      Counsel's real quarrel seems to be with the proposition that the Court will conduct a lodestar check on his fee request and not simply accept a request that awards him no more than a third of the recovery. Counsel highlights that "if time sheets are not legally required where the fee is a 1/3 percentage fee based on the retainer agreement – as opposed to an hourly fee, courts and parties will be saved a significant amount of time and expense that would otherwise be devoted to handling time records/fee applications." Dkt. No. 38 at 2. Reasonable arguments could be made on both sides of the issue as to whether the Court should receive time records at

all or conduct a lodestar check.  *See* 5 William Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 15:65 (5th ed. 2011) (comparing relevant benefits and costs of percentage and hourly methods).  But the Court does not write on a clean slate.  The Second Circuit has held that counsel is entitled to "reasonable compensation" based in part on the work the counsel performed and that time sheets ordinarily should be submitted.  *Fisher*, 948 F.3d at 607.  It also cited favorably to the district court decision in *Wolinsky* that holds that counsel should submit "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done" and that there "is a strong presumption that the 'lodestar' amount – that is the number of attorney hours reasonably expended times a reasonable hourly rate – represents a reasonable fee [which] the court may adjust … upward or downward based on other considerations."  *Wolinsky*, 900 F. Supp. 2d at 336.  The district court has discretion to choose "between the lodestar and percentage methods in determining a reasonable attorney's fee."  *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013).  However, the Second Circuit also encourages use of hours billed or the lodestar amount as a "cross-check" on a percentage fee award and to yield the "presumptively reasonable fee."  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Vargas Garcia v. Park*,  2019 WL 6117596, at *3 (S.D.N.Y. Nov. 15, 2019) (using lodestar amount as a cross-check on percentage of recovery fee request in FLSA case); *Santos v. Yellowstone Props., Inc.*, 2016 WL 2757427, at *4 (S.D.N.Y. May 10, 2016) (recognizing that "one-third-of-settlement sum is consistent with 'contingency fees that are commonly accepted in the Second Circuit in FLSA cases'" but "independently ascertain[ing] the reasonableness of the requested fees" through the lodestar cross-check (quoting *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719,

8

at *3 (E.D.N.Y. June 3, 2015))); *see also Kassman v. KPMG LLP*, 2021 WL 1393296, at * (S.D.N.Y. April 12, 2021) (holding that even when proposed fees do not exceed one third of the total settlement amount, courts in the Circuit use the lodestar method as a cross-check to ensure the reasonableness of attorney's fees).  Until this Court receives different direction, that is the review it will perform heavily weighted by the agreement counsel and his client reached before the litigation began.  It is important both to ensure that the fee awarded is reasonable and "to ensure that 'the interests of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients.'"  *Wolinsky*, 900 F. Supp. 2d at 336 (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997)).

"District courts in this Circuit typically approve fee requests between 30% and 33% of the settlement."  *Strauss v. Little Fish Corp.*, 2020 WL 4041511, at *9 n.1 (S.D.N.Y. July 17, 2020).  In addition, Plaintiff has now submitted his time records.  The time records reflect that counsel devoted 39.25 hours to the case, including approximately 5 hours investigating the case and drafting the complaint, 4 hours drafting discovery, and approximately 13 hours preparing for and participating in mediation and drafting and reviewing settlement papers.  The remainder of the time was spent on tasks such as preparing for and participating in a conference with the Court and drafting the motion for the approval of the settlement.  "In this district, courts generally award experienced wage-and-hour attorneys between $300 and $400 per hour."  *Agureyev v. H.K. Second Ave. Rest., Inc.*, 2021 WL 847977, at *11 (S.D.N.Y. Mar. 5, 2021); *see also Vargas Garcia*, 2019 WL 6117596, at *4 ("The Court's familiarity with recent attorney's fee awards to experienced attorneys in FLSA cases litigated in this judicial district, leads it to conclude that attorney's fee awards predicated on hourly rates of $400 are commonly made.").  Mr. Hassan's experience qualifies him to have his rates calculated at the high end of that range.  At $400 an

hour, Hassan's lodestar based on the 39.25 hours would be $15,700.  Even assuming some of the hours could be considered to be excessive or unnecessary, the lodestar is amply sufficient to support the fee request particularly considering that "[f]ee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Fisher,* 948 F.3d at 603 (quoting *Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)).

In short, even although Plaintiff started in the wrong place by declining to provide his time records, he ended in the right place.  The time records do not show the attorney fee request based on the retainer letter to be unreasonable.  The settlement will be approved.  *See Strauss v. Little Fish Corp.*, 2020 WL 4041511, at *9 (approving settlement that allocated one-third of the settlement consideration to counsel after counsel initially declined to provide contemporaneous time records after records were provided and court performed lodestar check).

SO ORDERED.

Dated: October 21, 2021
       New York, New York
                                          LEWIS J. LIMAN
                                     United States District Judge